Ralph SUTHERLAND, Plaintiff,

v.

CYBERGENICS CORPORATION and Matt Chamlin, Defendants.

No. 95 C 5605.

United States District Court,
N.D. Illinois,
Eastern Division.

Dec. 8, 1995.

**1220**

Robert Ronald Tepper, Chicago, Illinois, for Plaintiff.

Michael Nicholas Petkovich, Maureen McCann Sreenan, Jackson, Lewis, Schnitzler & Krupman, Chicago, Illinois, for Defendants.

---

### MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

Now before the court is defendants Cybergenics Corporation and Matt Chamlin's motion to dismiss or, in the alternative to transfer, pursuant to FED.R.CIV.P. 12(b)(2) and 28 U.S.C. § 1404(a), respectively. As set forth more fully below, the court denies the defendants' motion to dismiss for lack of personal jurisdiction, and grants defendants' motion to transfer.

### I. FACTS

Defendant Matt Chamlin ("Chamlin") is the president of Cybergenics Corporation ("Cybergenics") and works from an office in Westchester County, New York. Defendant Cybergenics is a Delaware corporation with its principal place of business in New Jersey. Cybergenics is in the business of manufacturing and selling nutritional products.

On or about February 15, 1995, Chamlin contacted Martin Kartin Associates, an executive recruiting firm in Manhattan. Chamlin told Martin Kartin ("Kartin") that Cybergenics was looking to hire an individual to come into the sales department with the potential of someday heading up the department. Chamlin gave Kartin the job of locating such a person.

Shortly thereafter, Kartin telephoned Chamlin to arrange a meeting in New York between Ralph Sutherland ("Sutherland"), the plaintiff in this case, and Chamlin to discuss Sutherland's potential employment with Cybergenics. On or about February 22, 1995, Chamlin did meet with Sutherland and Kartin to discuss the position. At the meeting, they discussed what it would take to get Sutherland to accept the position, however no final agreement was reached.

Shortly after that meeting, Chamlin telephoned Sutherland at his home in Illinois and extended to him an offer of employment. The parties negotiated various terms of the deal and agreed that Sutherland would commence employment around March 1, 1995.[1]

---

1. Plaintiff alleges that the terms of the oral agreement were as follows: (1) a salary of $175,-

000 plus a minimum bonus of $25,000; (2) an equity interest in Cybergenics for the plaintiff

They also agreed and understood that plaintiff would not be able to physically move to the east coast prior to March 1, but that he and his family would move as soon as reasonably convenient thereafter.

Sutherland did begin working in early March, 1995, as agreed, and shortly afterwards received a written employment contract from Cybergenics. Since the contract was consistent with the arrangement made with Chamlin, Sutherland signed it and returned it to Cybergenics.

Plaintiff alleges that at all times he performed as a loyal and faithful employee of Cybergenics but that Chamlin developed a personal animosity to plaintiff and secretly set about to replace him. He also alleges that by mid-June, 1995, Chamlin had already decided to replace plaintiff but instead lied to Sutherland about his future at the firm in order to induce the plaintiff to remain at Cybergenics until his replacement was in place. Relying on Chamlin's representations, Sutherland did not renew his lease in Illinois, agreed to lease a home in New York, and soon thereafter drove his car to New York.

On July 10, 1995, plaintiff was told for the first time that another sales executive had been hired. At this time, he was not told that he would be fired. On July 20, 1995, however, Chamlin did inform Sutherland that he was terminated immediately. Plaintiff alleges that he was terminated without cause or justification.

## II. DISCUSSION

### A. Personal Jurisdiction

■ This action was removed from the Illinois state court because it qualifies as a diversity case under 28 U.S.C. § 1332. In a case based on diversity of citizenship, a federal district court in Illinois has personal jurisdiction over nonresident defendants only if an Illinois court would have jurisdiction. *Daniel J. Hartwig Assoc., Inc. v. Kanner,* 913 F.2d 1213, 1216 (7th Cir.1990). In determining whether a state court has jurisdiction a court needs to make a two-part inquiry: "(1) whether the state statute allows jurisdiction, and (2) whether the assertion of jurisdiction complies with constitutional due process standards." *Wilson v. Humphreys (Cayman) Ltd.,* 916 F.2d 1239, 1243 (7th Cir.1990), *cert. denied,* 499 U.S. 947, 111 S.Ct. 1415, 113 L.Ed.2d 468 (1991). Here, these two inquiries collapse into one because Illinois' long-arm statute extends personal jurisdiction to the limit allowed under the due process clause of the fourteenth amendment.[2] *Dehmlow v. Austin Fireworks,* 963 F.2d 941, 945 (7th Cir.1992); *Mors v. Williams,* 791 F.Supp. 739, 741 (N.D.Ill. 1992); *see also Wilson,* 916 F.2d at 1243. Therefore, the court's sole inquiry is whether the district court could, consistent with due process, assert *in personam* jurisdiction over the defendants. *Wallace v. Herron,* 778 F.2d 391, 393 (7th Cir.1985), *cert. denied,* 475 U.S. 1122, 106 S.Ct. 1642, 90 L.Ed.2d 187 (1986).

■ The Due Process Clause operates to limit the power of a State to assert *in personam* jurisdiction over nonresident defendants. *Pennoyer v. Neff,* 95 U.S. (5 Otto) 714, 24 L.Ed. 565 (1878). Due process requires that the defendant have "minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1940)).

■ Seventh Circuit law makes clear that there are two types of jurisdiction that can be exercised over an out-of-state defendant—specific and general. *Wilson,* 916 F.2d at 1244. Specific jurisdiction may be

___

(without cost) at least as great as any other similarly situated executive in an amount between 1% and 5%; (3) a one-year employment contract guaranteeing him against dismissal without cause during such period; and (4) payment of plaintiff's moving expenses along with one or two months salary to compensate plaintiff for incidental expenses and inconveniences attendant upon moving.

**2.** "A court may also exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." 735 ILCS 5/2–209(c).

asserted when the defendant's contacts with the forum are related to the controversy underlying the litigation. *Id.* (citing *Helicopteros Nacionales de Columbia v. Hall,* 466 U.S. 408, 414 n. 8, 104 S.Ct. 1868, 1872 n. 8, 80 L.Ed.2d 404 (1984)). If there is such a relationship, the party asserting jurisdiction need only show that defendant's contacts with the forum reach a "minimum" threshold. A district court can, however, assert jurisdiction over a nonresident defendant even when the cause of action does not arise out of or relate to the defendant's activities in the forum state. *Helicopteros,* 466 U.S. at 414, 104 S.Ct. at 1872. This is called general jurisdiction. In this case, the defendant must have "continuous and systematic general business contacts" with the forum state. *Id.* at 416, 104 S.Ct. at 1873. Those contacts must be "so substantial and of such a nature as to justify suit against [the defendant] on causes of action arising from dealings entirely different from those activities." *International Shoe,* 326 U.S. at 318, 66 S.Ct. at 159. This is a fairly high standard requiring a greater amount of contacts, but permits the court to include in its analysis contacts with no relationship to the underlying dispute. *Wilson,* 916 F.2d at 1245; *Charlesworth v. Marco Manufacturing Co.,* 878 F.Supp. 1196, 1200 (N.D.Ill.1995).

### 1. Defendant Cybergenics

■ Plaintiff has stated the following three claims against defendant Cybergenics: (1) breach of a written contract; (2) breach of an oral contract; and (3) fraud. Consequently, for a court to find specific jurisdiction over Cybergenics, its contacts with the forum must be related to these three causes of action. With respect to the three claims, Cybergenics' contacts with this forum consist only of the mailing of the written employment agreement to the plaintiff at his home in Illinois and a phone call to the plaintiff during which the company's president and the plaintiff negotiated the terms of an oral contract.

Cybergenics' contacts with Illinois however, are far more wide-reaching. Cybergenics sells its nutritional products through four very large customers in Illinois: Sears Roebuck, Walgreen Drug Stores, American Stores (parent of Jewel, Osco, etc.), and Sportmart. Cybergenics also advertises on Illinois television stations and is represented by an independent sales broker/agent that has offices in Illinois. Defendant also has noted that approximately six times per year the company sends a salesperson to Illinois.

Without addressing the issue of specific jurisdiction, the court holds that, since Cybergenics contacts with Illinois are intentional, continuous, and systematic, general jurisdiction does apply. Certainly, Cybergenics has "purposefully availed" itself of the privilege of conducting activities in the forum state, and it is reasonably foreseeable to it that it could be hailed into court in Illinois. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985) (citing *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 295, 100 S.Ct. 559, 566, 62 L.Ed.2d 490 (1980)). Accordingly, defendant Cybergenics' motion to dismiss for lack of personal jurisdiction is denied.

### 2. Defendant Chamlin

■ Plaintiff has only brought one cause of action against defendant Chamlin, a fraud claim. The alleged fraud relates to an intentional false statement made by Chamlin to Sutherland in mid-June in order to induce the plaintiff to remain at Cybergenics until he could be replaced. The fraud allegedly took place at Cybergenics' executive offices in New York. Chamlin's only contact with Illinois, however, is tenuous at best. He made a single telephone call in February during which he offered Sutherland a position at Cybergenics. While that call is the basis for which the plaintiff sues Cybergenics (not Chamlin) for breach of an oral contract, it has nothing to do with the alleged fraud that took place later.

Plaintiff made no further allegations of contact by Chamlin with the forum state. Therefore, since the fraudulent act took place in New York and is unrelated to Chamlin's contact with Illinois, the court holds that specific jurisdiction does not apply. Furthermore, the court holds the same for general jurisdiction. Certainly, Chamlin has not made sufficient contacts with Illinois such

that he should expect to defend a suit brought in Illinois.

### B. *Transfer*

■ The court next must address defendants' joint motion to transfer pursuant to 28 U.S.C. § 1404(a). The court notes, however, that since defendant Chamlin is not subject to the jurisdiction of this court, venue here is improper as to Chamlin. 28 U.S.C. § 1391(a)(3). Therefore, with respect to defendant Chamlin, § 1406, and not § 1404, applies. Under § 1406(a), this court has discretion to transfer the case to a district in which venue is proper, if transfer is "in the interest of justice." 28 U.S.C. § 1406(a). A district court's determination under 28 U.S.C. § 1406(a) will only be reversed upon a showing of a clear abuse of discretion. *Saylor v. Dyniewski*, 836 F.2d 341, 345 (7th Cir.1988).

■ Defendant Cybergenics' motion to transfer remains pursuant to 28 U.S.C. § 1404(a). Under § 1404(a), Cybergenics, as the movant, has the burden of establishing that the transfer is appropriate. *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219–20 (7th Cir.1986). In order to do so, Cybergenics must establish the following: (1) that venue is proper in the transferor forum, (2) that venue is proper in the transferee forum, and (3) that the transfer is for the convenience of the parties, the witnesses, and in the interests of justice. *Id.;* 28 U.S.C. § 1404(a). The weighing of these factors for and against transfer requires "individualized, case-by-case consideration of convenience and fairness." *Coffey*, 796 F.2d at 219 (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622, 84 S.Ct. 805, 812, 11 L.Ed.2d 945 (1964)).

Neither party disputes that venue is proper in both this district and in New Jersey under 28 U.S.C. § 1391(a); therefore, the court's only inquiry is whether Cybergenics has met its burden with respect to the third element.

### 1. *Plaintiff's Choice of Forum*

■ A plaintiff's choice of forum is an important consideration in determining whether or not a motion to transfer should be granted. *Heller Financial, Inc. v. River-*

*dale Auto Parts, Inc.*, 713 F.Supp. 1125, 1129 (N.D.Ill.1989). It, however, is not absolute and will not defeat a well-founded motion to transfer. *General Accident Ins. Co. v. Travelers Corp.*, 666 F.Supp. 1203, 1206 (N.D.Ill. 1987). Accordingly, the court takes this into consideration along with all of the other factors in deciding the motion.

### 2. *Convenience of the Parties and Witnesses*

■ Both parties argue that they will be inconvenienced if the case proceeds in Illinois or New Jersey. Plaintiff points out that a number of his family and friends are potential witnesses to testify about the plaintiff's reliance and damages. He also notes that he intends to call three other witnesses to testify about the plaintiff's quality of work, monetary damages, and emotional damages. Defendant, meanwhile, intends to rely on several witnesses from New Jersey and New York. Given that the inconvenience falls on both parties with respect to this issue, the court finds that this factor does not weigh strongly in favor of either party.

### 3. *Interests of Justice*

Consequently, this court must examine the interests of justice factor to decide this motion. After doing so, the court holds that transfer of this case to New Jersey will advance the interest of justice. With respect to this case, three important considerations weigh in favor of transfer.

■ First, the contract action will be governed by New Jersey law. In the Employment Agreement, Cybergenics and Sutherland expressly provided that "[t]his Agreement shall be governed and enforced in accordance with the laws of the State of New Jersey applicable to contracts made and to be performed entirely within that state." Illinois courts have long enforced agreements regarding choice of law. *See Sarnoff v. American Home Products Corp.*, 798 F.2d 1075, 1081 (7th Cir.1986). Since the district court in New Jersey will be more readily familiar with the applicable law than this court, this factor certainly favors transfer.

Second, the court believes that the parties will receive a speedier resolution of their dispute in the District of New Jersey. Courts in this district recognize that the Northern District of Illinois consistently ranks among the most congested of district courts nationally. *Chapman Associates General Business, Inc. v. Justak,* 734 F.Supp. 828, 831 (N.D.Ill.1990); *Letter–Rite, Inc. v. Computer Talk, Inc.,* 605 F.Supp. 717, 722 (N.D.Ill.1985). Thus, this factor also weighs in favor of transfer.

Finally, this court finds that transfer of the case would likely result in a conservation of judicial resources. This court has already dismissed the individual defendant Chamlin as a party defendant for lack of personal jurisdiction. Defendants in the reply memorandum, meanwhile, already concede that, as for both defendants, venue and jurisdiction are proper in the District of New Jersey. Defendants' Reply Memorandum of Law in Support of Motion to Dismiss or for Transfer, at p. 4. Consequently, if this court keeps the case pending against Cybergenics and plaintiff refiles another lawsuit against Chamlin in New Jersey, where there is jurisdiction, there will be two courts making independent rulings as to one fraud claim. Therefore, in the interests of justice, this court finds that the District of New Jersey, which has jurisdiction over both defendants, is the appropriate forum to try this case. Accordingly, defendants Cybergenics and Chamlin's motion to transfer, pursuant to §§ 1404(a) and 1406(a), respectively, is granted.

### III. *CONCLUSION*

For the reasons set forth below, defendants Cybergenics Corporation and Matt Chamlin's motion to dismiss for lack of personal jurisdiction is denied. Defendants' motion to transfer is granted. This case is transferred to the District of New Jersey, Newark Division, for further proceedings.